(43 P.3d 824)

No. 87,612

BUTLER NATIONAL CORPORATION, *Appellant,* v. GERALD T. KELLY & COMPANY, *Appellee.*

Opinion filed April 5, 2002.

*Christopher J. Reedy*, of Colantuono & Associates, L.L.C., of Leawood, for the appellant.

*Michelle M. Suter*, of Commercial Law Group, P.A., of Leawood, for the appellee.

Before LEWIS, P.J., PIERRON and BEIER, JJ.

LEWIS, J.: Butler National Corporation (Butler) sued Gerald T. Kelly & Company (Kelly), alleging that Kelly had agreed to do some accounting work for Butler and had not done the work. Butler sought to recover the payments it had made to Kelly, and it also sought declaratory judgment relief. The trial court held that all of Butler's claims against Kelly were required to be arbitrated and dismissed its petition. Butler appeals from that dismissal.

Butler is a Delaware corporation with its principle place of business in Johnson County, Kansas, and it does business all over the

United States. Kelly is a California Professional Corporation providing certified public accountant services.

According to Butler, it received an unsolicited letter from Kelly, offering its accounting services. The parties negotiated on the fee; Kelly reviewed Butler's files and submitted a proposal for audit services for the tax year ending April 30, 1999. Later, Kelly sent Butler another letter estimating the audit work would require 600 hours of professional time at an estimated cost of $50,000 to $60,000. This will be referred to as the 1999 contract between the parties. In addition to the agreement on the fee, the parties also agreed that should a fee dispute arise, it would be submitted to mediation by a third party and to binding arbitration should mediation fail. In April 2000, the parties entered into another agreement, whereby Kelly agreed to observe Butler's physical inventories for the year ending April 30, 2000. Kelly estimated its fee for this service to be $4,100. This will be referred to as the 2000 contract.

Soon, serious disagreements arose between the parties, and Kelly informed Butler it would require another $65,000 in fees for it to complete the 1999 audit, bringing the total cost of the audit to $109,100.

Butler apparently found this to be excessive, and it ultimately filed this action in Johnson County. In the petition, Butler alleged it had paid Kelly in the neighborhood of $40,000 in December 1999 and that it had not seen any bill or statement of work completed by Kelly at that time or at any later time. It further alleged that Kelly wanted an additional $90,000 to complete the 1999 audit. Butler also claimed it sent Kelly the requested $4,100 for the inventory review provided for by the 2000 contract and that Kelly sent representatives to perform the audit who were not licensed to practice public accounting in Kansas.

Butler took the position that Kelly had breached the agreement to perform auditing and inventory review services and asked the court to void the 1999 audit agreement and to determine that Butler was not subject to personal jurisdiction in California or to the jurisdiction of a California arbitration panel. Butler also claimed

that Kelly had breached the agreement and that Butler had the right to rescind and should have all monies returned to it.

The prayer of Butler's petition asks for judgment against Kelly for monies paid, for negligently representing the time and cost required for the 1999 audit, and for breach of contract.

Kelly's response was to file a motion to dismiss Butler's petition, arguing the fee provisions in the 1999 agreement required the dispute to be submitted to mediation and then to arbitration. Apparently, the parties had participated in a mediation session, but it was not successful, which left arbitration as Butler's remedy.

The trial court found that the parties intended for any fee dispute to be arbitrated. It also found that the nature of Butler's business and its transactions with Kelly brought the whole matter under the Interstate Commerce Clause and Federal Arbitration Act (FAA). The trial court held the contract enforceable and binding, held that Butler's only remedy was arbitration, and dismissed Butler's claims.

## THE 1999 AGREEMENT

We first turn to the 1999 agreement entered into by the parties. Butler argues that this is not a fee dispute issue, that it has raised other claims, and that this lawsuit is not subject to the arbitration clause. This involves the interpretation of a written agreement, and we have an unlimited scope of review. *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 152-53, 959 P.2d 894 (1998). The FAA provides that all doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Coffey v. Dean Witter Reynolds, Inc.*, 891 F.2d 261, 262 (10th Cir. 1989). Absent some ambiguity in the written agreement, the language of the contract defines the scope of disputes subject to arbitration. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289, 151 L. Ed. 2d 755, 122 S. Ct. 754 (2002).

In determining whether arbitration is required under the facts of a case, we utilize a two-step analysis. We must first determine whether the parties agreed to arbitrate the claims at issue. If that is true, we must then determine " ' "whether legal constraints external to the parties' agreement foreclose the arbitration of those

claims." ' " *Via Fone, Inc. v. Western Wireless Corp.*, 106 F. Supp. 2d 1147, 1150 (D. Kan. 2000) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 87 L. Ed. 2d 444, 105 S. Ct. 3346 [1985]).

The FAA provides:

"[A] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2 (2000).

In this case, the fee dispute provision in the 1999 agreement reads as follows:

"In the event of a dispute over fees for our services, we mutually agree to try in good faith to resolve the dispute through mediation by selecting a third party to help us reach an agreement. If we are unable to resolve the fee dispute through mediation, BNC and Kelly & Company agree to submit to a resolution by arbitration. Such arbitration shall be binding and final. IN AGREEING TO ARBITRATION, WE BOTH ACKNOWLEDGE THAT IN THE EVENT OF A DISPUTE OVER FEES, EACH OF US IS GIVING UP THE RIGHT TO HAVE THE DISPUTE DECIDED IN A COURT OF LAW BEFORE A JUDGE OR JURY AND INSTEAD WE ARE ACCEPTING THE USE OF ARBITRATION FOR RESOLUTION."

First, the arbitration clause as set forth above is rather specific. It does not automatically encompass every claim arising out of the agreement between the parties. There is no reason why arbitration provisions cannot limit their coverage to specific types of disputes and leave other disputes in the agreement to the court system. See *Alexander v. Everhart*, 27 Kan. App. 2d 897, 907, 7 P.3d 1282, *rev. denied* 270 Kan. 897 (2000). Butler makes a disingenuous argument that its claims for negligent misrepresentation, breaches of the audit and inventory agreements, and for the return of two separate retainers are not fee disputes and are not subject to the arbitration provision which we have quoted above.

Butler's lawsuit against Kelly on the 1999 agreement brings to mind the sage advice about something that "quacks like a duck." No matter how much Butler would like to explain to us why this is not a fee dispute, the fact remains that it is a fee dispute. Butler

wants all the money back it paid to Kelly. Kelly thinks Butler owes it more money. If there were no dispute between the parties about the fees, this lawsuit would not exist.

We will not engage in legal semantics to nullify the arbitration clause between the parties. The lawsuit concerning the 1999 agreement, although there are any number of allegations, still amounts to an effort by Butler to recover all fees it has paid Kelly. We hold the trial court did not err in dismissing those portions of Butler's petition which relate to the 1999 agreement. Those provisions are required to be submitted to binding arbitration.

## THE APRIL 2000 INVENTORY AGREEMENT

The trial court, while it dismissed Butler's lawsuit under its 1999 agreement, also dismissed Butler's lawsuit based on the 2000 inventory agreement. We conclude the trial court erred in dismissing the cause of action based on the 2000 inventory agreement. The agreement concerning inventory was entered into approximately 6 months after the audit agreement and was reduced to writing by an engagement letter which was signed in April 2000. The engagement letter concerning the inventory contained no arbitration provision and estimated that Kelly's fees for that service would be approximately $4,100.

We see these as two separate agreements; there is no required arbitration clause in the inventory agreement entered into in April 2000, and the trial court erred in dismissing Butler's claims concerning that agreement.

The claims arising out of the 2000 agreement are not subject to binding arbitration, and, on remand, should be tried before the trial court.

## DECLARATORY RELIEF

Part of Butler's action asks the court to declare that it was not subject to arbitration in California regardless of whether further relief was sought or other claims raised.

The trial court apparently did not address nor did it decide this issue. It found that Butler and Kelly were parties having their domiciles in different states and that Butler "is a corporation that has

publicly traded stock and derives its revenue from distribution of products throughout a nationwide market."

In this case, the trial court did not address Butler's declaratory judgment request because it determined all of the claims raised were preempted by the FAA and dismissed the entire petition. Although the trial court has authority to issue declaratory judgments, we are aware of no requirement that it do so. Butler provides us with no citations to show that it was error for the court to decline to rule on the declaratory judgment request.

However, it appears the trial court simply did not address the issue, and we suggest that the issue be addressed and decided on remand.

Affirmed in part, reversed in part, and remanded.